IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STUART T. SEUGASALA,<br><br>    Defendant, | Case No. 3:13-cr-00092-RRB<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS** |

## I. INTRODUCTION

Before the Court, at **Docket 597**, is Defendant with a renewed motion to dismiss the indictment. The United States renews its opposition at Docket 640. Defendant contends that the indictment in this case was not returned by a Grand Jury drawn from a jury wheel that was created from a fair cross section of the community as required by the Sixth Amendment and the Jury Selection and Service Act of 1968.

## II. BACKGROUND

The District of Alaska selects a grand jury at random pursuant to the District's Plan for Random Selection of Grand and Petit Jurors, adopted in accordance with the Jury Selection Act. The Plan follows the mandate of the Act by using the registered voters list as the source of names for potential jurors, as "the list of registered voters for the last local, state or national election represents a fair cross-section of the community in the District of Alaska." Every two years the District Court obtains a list of registered voters from the State of Alaska for the most

recent election. From that list, a pool of potential jurors is selected at random and these individuals comprise the District's jury wheel. Each new grand jury is selected from a smaller group of potential jurors drawn from the jury wheel and serves for term of 18 months. Defendant challenges the jury wheel prepared in 2011, which was the source of the grand jury that indicted him in November 2013, as failing to represent a fair cross section of the community because of the reliance on voter registration in the jury wheel creation.

### III. STANDARD

Under the Sixth Amendment to the Constitution, Defendant has a right to trial by an impartial jury, which the Jury Selection and Service Act of 1968 clarifies must be drawn from "a fair cross section of the community."[1] This requirement extends to both petit and grand juries.[2] A defendant may challenge whether the local jury plan substantially operates in accordance with the Act and "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the Act] in selecting the grand or petit jury."[3] If the Court determines that there has been a substantial failure to comply with the fair-cross-section requirement in selecting the grand jury, the Court may dismiss the indictment.[4]

---

[1] 28 U.S.C.S. §§ 1861-78; *see Taylor v. Louisiana*, 419 U.S. 522, 527 (1975).

[2] *See Duren v. Missouri*, 439 U.S. 357, 359 (1979); *United States v. Miller*, 771 F.2d 1219 (9th Cir. 1985).

[3] 28 U.S.C. § 1867.

[4] *Id*.

## IV. DISCUSSION

Three elements must be demonstrated by Defendants in order to establish a prima facie case of a violation of the Sixth Amendment's fair-cross-section requirement.[5] A defendant must show:

(1) that the group alleged to be excluded is a 'distinctive' group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id*. The Court will address each of the three prongs of the *Duren* test individually below.

### A. Distinctive Group

In the present case, Defendant asserts that he is Samoan and that Samoans are considered by the United States Census Bureau as a distinct group known as Pacific Islanders.[6] The Court notes, in this regard, that Defendant was born and raised in Alaska, does not speak Samoan, has never apparently been to Samoa, and does not readily appear to be Samoan. Defendant's mother attended much of the trial and appears to be Caucasian. Despite this, Defendant asserts that he has been denied an impartial jury because the jury pool from which the grand jury that indicted him was selected did not contain a sufficient number of Pacific Islanders. Given the facts of this

---

[5] *Duren*, 439 U.S. at 364.
[6] Docket 597 at 7.

case however it is difficult to see how Defendant has been prejudiced by the jury selection method employed by the court. Nevertheless, for purposes of this motion and giving Defendant the benefit of the doubt, the Court will treat Defendant as Samoan.

In responding to Defendant's motion, the United States disputes the characterization of Pacific Islanders as a distinctive group due to a lack of support that this grouping shares sufficient common background, interests, or beliefs to qualify themselves as a "distinctive group" for Sixth Amendment analysis.[7] While the Court acknowledges that Pacific Islanders may be a generalized grouping of individuals with varied mother languages or family origins, the same could be said about any racial grouping. Moreover, the fact that Pacific Islanders are already recognized as a distinctive group in the Court's report on the jury selection process further supports their status as a distinctive group for the purpose of evaluating jury selection. **The Court therefore finds that Defendant meets the first prong of the *Duren* test because Pacific Islanders are a distinctive group.**

   B. **Fair and Reasonable**

To establish the second prong of the *Duren* test, defendants must provide "proof, typically statistical data, that the jury pool does not adequately represent [Pacific Islanders] in relation to the number of such persons in the community."[8] Defendant argues that the comparative disparity test should be utilized by the court to evaluate the representation, rather

---

[7] *United States v. Fletcher*, 965 F.2d 781, 782 (9th Cir. 1992).
[8] *United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996).

than the absolute disparity test.[9] While the Court recognizes that precedent in this circuit no longer mandates exclusive reliance on absolute disparity, the Court is not persuaded that the present case warrants departure from this historical method of analysis in favor of comparative analysis, particularly where "one problem with the comparative disparity test is that it can overstate the underrepresentation of a group that has a small population percentage" and where there exists no obvious indication that the current system is unfair to Defendant.[10] The Court therefore will utilize the absolute disparity test in evaluating Defendant's challenge to the fair-cross-section requirement.

The Court's Jury Selection Plan Report indicates that the Pacific Islanders in the jury wheel, as compared to other jurors who identified their group, equated to 118 of 24,030 or .5%. The most recent Census Bureau data, according to Defendant, indicates that the Pacific Islander population in Alaska is 1% of the entire population. This leads to an absolute disparity of just .5%. In the past this Circuit has "declined to find underrepresentation of a distinctive group where the absolute disparity was 7.7% or lower."[11] Given the facts and circumstances of this case, the Court finds no reason to deviate from this precedent especially given how very low the

---

[9] Absolute disparity eliminates the "unknowns" and only analyzes the data from those that reported their race, while comparative disparity takes the absolute disparity figure and then divides it by the total population.

[10] *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1161-62 (9th Cir. 2014) (en banc) *cert. denied*, 135 S. Ct. 709 (2014) ("As with the absolute disparity test, no court has been able to articulate or defend the use of a comparative disparity test on any sound statistical basis.")

[11] *Hernandez-Estrada*, 749 F.3d 1161 quoting *United States v. Rodriguez-Lara*, 421 F.3d 932, 943-44 (9th Cir. 2005).

disparity is. **Therefore, Defendant has failed to demonstrate the second prong of the *Duren* test because the representation of Pacific Islanders in the jury wheel was fair and reasonable in relation to the community population.**

### C. Systemic Exclusion

Finally, Defendant must demonstrate that the underrepresentation is due to systemic exclusion of Pacific Islanders in the jury-selection process. Again, Defendant has failed to do so.

Defendant presents absolutely no evidence of systematic exclusion of Pacific Islanders. Defendant speculates however that Pacific Islanders are less likely to register as voters because of their poverty and/or mobility and references raw statistical data from the 1980s that suggests that these factors can have a negative impact on voter registration. There is no empirical evidence however that Pacific Islanders, who have become United States citizens, register to vote at a lower rate than the general population nor is there empirical evidence that their alleged poverty and mobility leads to reduced voter registration. This is purely conjecture.

Furthermore, Defendant has failed to overcome the "high hurdle" necessary to demonstrate that other methods of juror selection, in addition to voter registration, would substantially increase the representation of Pacific Islanders in the jury pool. Defendant has not therefore made a prima facie showing that Pacific Islanders were systematically excluded from the grand jury pool which indicted him.[12]

---

[12] *Id*. at 1166 n.8.

**For these reasons, Defendant has failed to establish the third prong of the Duren test because there is an insufficient showing that any underrepresentation is the result of a systemic exclusion of Pacific Islanders in the jury-selection process.**

## V. CONCLUSION

For the reasons outlined above and the reasons set forth by the United States in its opposition, Defendant's Motion to Dismiss is hereby **DENIED.**

**IT IS SO ORDERED** this 20th day of April, 2015.

S/RALPH R. BEISTLINE<br>
UNITED STATES DISTRICT JUDGE