IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STUART T. SEUGASALA,<br><br>Defendant. | Case No. 3:13-cr-00092-RRB<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO VACATE (Docket No. 1039) and SCHEDULING SENTENCING** |

## I.  INTRODUCTION

Before the Court is Defendant, Stuart T. Seugasala, with an Amended Memorandum of Points and Authorities, which current counsel filed in support of Defendant's earlier *Pro Se* Motion Pursuant to 28 U.S.C. § 2255.[1]  Defendant withdraws claims 2, 3, 4, 7, 8, 9, 10, 11, and 12 of the *pro se* motion and proceeds, hereinafter, with claims 1, 5, 6, and 13.  The matter has been fully briefed, and Defendant requests an evidentiary hearing.[2]

The Court has considered the matter in detail and has reviewed the entire trial transcript, which the Court includes herein by reference.  The Court also has reviewed the

---

[1] Dockets 1061, 895.
[2] Dockets 1054, 1061, 1062, 1063, 1069, 1073.  The Government confirmed that all discovery is complete.  Docket 1071.

chronological notes of Probation and studied the exhibits filed by Defendant, and is fully advised as to the premises.

## II.   BACKGROUND

The history of this matter has been well documented by the parties and is not in significant dispute.  Suffice it to say that Defendant was convicted of the seven counts against him in the Amended First Superseding Indictment[3] [hereinafter "the Indictment"] after a nine-day jury trial.  Defendant was sentenced to:  Life on Counts 1s, 2s, 3s, and 120 months on Counts 6s and 7s, to be served concurrently; and 84 months on Counts 4s and 5s, to be served concurrent to each other but consecutive to Counts 1s, 2s, 3s, 6s, and 7s.[4] In a parallel proceeding arising out of the same conduct, the Honorable H. Russel Holland imposed an additional consecutive sentence of 48 months for violations of Supervised Release.[5]

Defendant's conviction was upheld on appeal in an order filed by the United States Court of Appeals for the Ninth Circuit on November 17, 2016.[6]  The United States Supreme Court denied *certiorari* on April 18, 2018.[7]

## III.   CLAIMS FOR RELIEF

Claim 1 of the *pro se* motion, seeks dismissal of Count 5 of the Indictment, "Use of Firearms in Furtherance of Kidnapping," based on subsequent case-law finding that kidnapping is not a crime of violence under the residual clause of 18 U.S.C.

---

[3] Docket 391.
[4] Dockets 706, 719.
[5] Case No. 3:11-cr-00031-HRH, Docket 76.
[6] Dockets 865, 873.
[7] Docket 893.

*United States v. Seugasala*                                                                 Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 2
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 2 of 15

§ 924(c)(3)(B).[8]  Accordingly, Defendant argues, his conviction on this count violates the due process clause.[9]  While Defendant's conviction on Count 5 was upheld on appeal, the Government did not oppose Defendant's argument regarding Count 5.  Therefore, Count 5 of the Indictment will be, and hereby is, **DISMISSED**.

Defendant's second claim (Claim 5 of the *pro se* motion) alleges that trial counsel was ineffective in failing to obtain records disclosing the duration and scope of Defendant's informant relationship with federal agents.  Defendant contends that such efforts would have bolstered his duress and public authority defenses at trial.[10]

Defendant's third claim (Claim 6 of the *pro se* motion) alleges that counsel was ineffective in failing to seek physical access to the phones which generated the Cellebrite and XRY reports from Defendant's iPad and cell phones, which Defendant contents would have shown that the Government's extraction reports were incomplete or unreadable.[11]

Finally (Claim 13 of the *pro se* motion), Defendant contends that trial counsel was ineffective in failing to prepare for trial in a reasonable amount of time.[12]

## IV.   AMENDED MEMORANDUM

Defendant's current counsel elaborates on Claims 5, 6, and 13 in the Amended Memorandum of Points and Authorities in support of the instant motion, and

---

[8] *See Johnson v. United States*, 576 U.S. 591, 597, 135 S. Ct. 2551, 2557, 192 L. Ed. 2d 569 (2015) (finding the residual clause "unconstitutionally vague.").

[9] Docket 895 at 4.

[10] *Id.* at 14.

[11] *Id.*

[12] *Id.* at 15.

*United States v. Seugasala*                                                   Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                    Page 3
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 3 of 15

provides additional argument and authority.[13]  Defendant argues that had trial counsel more effectively used the information he had at hand, and been more effective in discovering additional evidence, trial counsel could have better buttressed both Defendant's public authority defense as to the drug conspiracy count, and his duress defense as to the kidnapping counts.  In short, Defendant argues that trial counsel was not adequately prepared for trial to cross-examine Government witnesses as to all counts, and failed to establish evidence that would have shown that Defendant reasonably believed he was an informant during his drug activities.  Defendant argues further that this additional information may have shown that co-defendant, Khamnivong, as well as others, was suspicious of Defendant's informant status when the kidnapping and torture occurred, thus instilling fear in Defendant and bolstering the duress defense.

The Government does not oppose Defendant's request to dismiss Count 5 of the Indictment, and acknowledges the timeliness of the instant motion.  The Government, however, opposes the remainder of the § 2255 Petition.[14]  Generally, it disputes that Defendant met the two-pronged *Strickland* test necessary to establish a constitutional claim for ineffective assistance of counsel.[15]  The Government concludes that, given the overwhelming evidence in support of Defendant's guilt, and the lack of any direct evidence to support Defendant's defenses, one cannot reasonably challenge the competency of trial counsel or show that the verdicts would have been different had trial counsel acted as

---

[13] Docket 1061.

[14] Docket 1054.

[15] *Id.* at 7 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (Holding that a petitioner must show both (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense.")).

*United States v. Seugasala*                                                                  Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 4
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 4 of 15

Defendant now suggests that he should have.[16]  The Government contends, therefore, that the convictions should stand and the instant motion should be denied.

## V.   EVIDENTIARY HEARING

The Court recalls the trial hereof, as well as the trial of co-defendant, Khamnivong, and has reviewed the record in detail, including the papers filed in relation to the instant motion, the various exhibits thereto, and the chronological notes maintained by Probation.  The Court has also reviewed the trial transcript in detail, and the briefing filed in the underlying appellate case, and has given the parties a full opportunity to present the relevant facts.  Having done all the above, the Court concludes that an evidentiary hearing is not necessary to address the instant motion, for the issues raised can be addressed entirely on the record.

Therefore, the Motion for Evidentiary Hearing is **DENIED**.

## VI.   STANDARD OF REVIEW

As pointed out by the parties, to warrant relief based upon a claim of ineffective assistance of counsel, a petitioner must meet the two-pronged test of *Strickland v. Washington,* and show both (1) "that counsel's performance was deficient and (2) "that the deficient performance prejudiced the defense."[17]

To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness."[18]  "Judicial scrutiny of

---

[16] Docket 1054 at 8–12.
[17] 466 U.S. at 687.
[18] *Id*. at 688.

*United States v. Seugasala*                                                    Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 5
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 5 of 15

counsel's performance must be highly deferential."[19]  The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as there are "countless ways to provide effective assistance in any given case."[20]

To establish prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[21]  "The likelihood of a different result must be substantial, not just conceivable."[22]  And, as defense counsel notes, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."[23]

Ultimately, Defendant must prove both deficient performance and the resulting prejudice to establish ineffective assistance of counsel.[24]

The focus of Defendant's complaints is on the quality of defense provided by trial counsel, Robert Leen.  In this regard, the Court notes that Attorney Leen was the second attorney appointed to represent Defendant.  Previously, Defendant had been represented by a well-respected local attorney who was relieved upon request of Defendant when Defendant became unhappy with counsel.  Ultimately, although concerned about Defendant's efforts to manipulate the system, the Court allowed Defendant to act informally as co-counsel with Attorney Leen to make sure that Defendant's issues were

---

[19] *Id*. at 689.
[20] *Id*.
[21] *Id*. at 694.
[22] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).
[23] *Strickland*, 466 U.S. at 694.
[24] *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002).

*United States v. Seugasala*                                                          Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 6

Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 6 of 15

addressed. Attorney Leen, however, remained well in command of the case throughout trial, as the trial transcript attests.

## VII. DEFENDANT'S PUBLIC AUTHORITY DEFENSE

For Attorney Leen to develop a public authority defense, he would have had to establish, by a preponderance of the evidence, that Defendant reasonably believed that he was acting as an authorized Government agent assisting in law enforcement activity at the time of the offenses charged in the Indictment.[25] This is precisely what Attorney Leen attempted to do.

Soon after Defendant arrived in Alaska from Washington, where he had been on supervised release, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") tentatively considered using Defendant as an informant, to act as an authorized Government agent to assist law enforcement. Because Defendant still was on supervised release, Probation sought and obtained approval from the Court for a period of up to 90 days to allow Defendant to act in this capacity during the summer of 2011. However, final approval of this relationship was never given by the ATF, and Defendant never formally acted as such. ATF Agent Jay Sherman testified about this relationship at length at trial, as did Defendant. Although an Informant Agreement was discussed with Defendant, a draft copy of which was admitted into evidence, one never was approved by the ATF nor finalized by the parties.[26] Nevertheless, Defendant remained in frequent contact with Agent Sherman and Probation and was hopeful that by doing so his supervised released

---

[25] Docket 568 at 48 (Jury Instruction No. 41).
[26] Docket 770 at 2 (Government trial Exhibit 365).

*United States v. Seugasala*                                                      Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 7

Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 7 of 15

might be terminated early. This all was discussed at length and in detail at trial. There is little doubt that the jury understood the relationship between Defendant and law enforcement, and also understood the difference between an informant and a source of information. Significantly, other than Defendant's testimony, there was, and currently is, no evidence that Defendant ever acted as an informant or government agent, as defined in the jury instructions, and no reason to believe that further effort on Attorney Leen's part would have defined informant better than the pattern instruction. Nor could Attorney Leen have delved deeper into Defendant's state of mind than he did in presenting Defendant's trial testimony.

Regarding Defendant's iPad and cell phones, as the Court previously concluded at Docket 478, there is no reliable evidence that the Government improperly manipulated them or destroyed evidence. Also, there is no reason to believe that physical access to Defendant's iPad and cell phones, which generated the Cellebrite and XRY reports used at trial, would have led to new or exculpatory evidence, or anything that was inconsistent with the voluminous evidence that was produced. Defendant's contention otherwise is purely speculative. Nor has the Court found evidence of an informant status in its detailed review of the chronological notes kept by Probation, where it likely would have been found, or in the extensive exhibits submitted by Defendant. While Defendant was in frequent contact with Agent Sherman and his Probation Officers, there is little, if any, evidence that Defendant provided information to authorities that they did not already have, and no evidence that led to the prosecution of others. Nor did Defendant ever introduce individuals to undercover officers or agents to further their investigations as

*United States v. Seugasala*                                                      Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 8
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 8 of 15

envisioned by the draft informant agreement. It also is clear that there was no evidence, other than Defendant's testimony, that either Probation or the ATF was aware of Defendant's criminal activities or associations with co-defendants in this matter during the time in question, and no evidence of such appears in the many phone records and text messages between the parties that were admitted into evidence. Nor did the authorities know of Defendant's on-going drug operation since first arriving in Alaska, which operation Defendant disputes, but which was credibly testified to in detail by co-defendant Timothy Miller.

However, there was considerable evidence produced at trial that Defendant was playing both sides as he actively, but secretly, oversaw a drug operation and took part in home invasions, while simultaneously engaging with authorities. While Defendant alludes to various exculpatory contacts he claims to have had with authorities, that he alleges were hidden by the Government and not presented to the jury, these allegations are speculative in nature and not supported by any reputable evidence.

In this regard, it is important to note that the evidence shows that the first authorities knew about Defendant's illegal activities charged in the Indictment came as a result of the arrest of Timothy Miller on April 23, 2013, in Valdez, Alaska. Miller's arrest, while selling drugs for Defendant, led to the discovery of incriminating evidence on Miller's cell phone. This led, for the first time, directly to Defendant. This evidence was discovered long after the crimes of conviction took place, and ultimately led to Defendant's arrest and the instant charges. Up to this point in time, there is no evidence that the Government had any knowledge of Defendant's criminal activity or had ever authorized

*United States v. Seugasala*                                                    Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 9

Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 9 of 15

such crimes. Moreover, Defendant actively concealed this part of his life: the drug conspiracy, the kidnappings, the firearms, the assaults, and the HIPPA violations. There is no reputable evidence that the eventual discovery of any of these crimes was because of information that Defendant provided.

The fact that Defendant may have been initially viewed as a possible informant by the ATF in 2011, or treated favorably by Judge Holland in 2012, well before most of the crimes of conviction occurred or were known to have been committed, does not suggest that Defendant was ever permitted to engage in illegal acts or that he reasonably believed that he was. Nor is there anything in Officer Astle's September 2012 memorandum to Judge Holland, which Defendant contends was improperly withheld, that was dramatically different than the overall trial testimony. This memorandum, while positive at the time, did not foresee the future or suggest that Defendant was permitted to engage in illegal activity. While it is undisputed that, early on, both the ATF and Probation were hopeful that Defendant might become helpful to the Government, this never proved to be the case, primarily because of Defendant's unwillingness to comply with the conditions set by ATF. Had Attorney Leen utilized this memorandum, it would have had little, if any, impact on the matter given the totality of the evidence, and given Defendant's subsequent conduct.

Finally, there was considerable evidence presented at trial to establish Defendant's relationship with authorities. Defendant, Agent Sherman, and Officers Kelley and Astle, each testified about this at length and were cross examined thoroughly at trial. While denying that they authorized any illegal conduct by Defendant, neither the ATF nor

*United States v. Seugasala*                                    Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing          Page 10
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 10 of 15

Probation disputed their rather extensive contacts with Defendant. Attorney Leen had ample evidence to argue the public authority defense to the jury and set forth this theory clearly during the testimony of Defendant, and forcibly during his closing argument. And the jury specifically was advised regarding this defense in the jury instructions. As a result of Attorney Leen's efforts, the jury clearly understood the scope and duration of Defendant's relationship with federal authorities.

## VIII.   DURESS DEFENSE

In order to establish a duress defense, Attorney Leen would have had to establish that Defendant's involvement in the kidnapping and torture of the two victims was the result of duress, and not of Defendant's own free will. In other words, Defendant would have to show that his actions were motivated by his fear of co-defendant Khamnivong or others. The jury instruction that was given clearly spelled out the elements of this defense. In order to establish a duress defense, Defendant would have to establish, by a preponderance of the evidence, that there was a present, immediate, or impending threat of death or serious bodily injury to Defendant or his family if Defendant did not participate in the crime; that Defendant had a well-grounded fear of such; and that Defendant had no reasonable opportunity to escape the threatened harm.[27]

The assaults that occurred during the kidnappings were memorialized by a video which was taken by co-defendant Miller, allegedly taken at Defendant's request. This video was admitted into evidence over Attorney Leen's objection.[28]   This video

---

[27] Docket 568 at 47 (Jury Instruction No. 40).
[28] Docket 768 at 167 (Government Exhibit 270 admitted).

*United States v. Seugasala*                                                                      Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing          Page 11

Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 11 of 15

depicted the sodomization of the two victims with a hot curling iron;[29] victims who were met and escorted to the scene by Defendant. The video was substantiated by the very credible trial testimony of the two victims, by co-defendant Timothy Miller, and by the medical evidence regarding the extent of injury.[30] The video, which Defendant, thereafter, allegedly displayed proudly to his 15-year-old son and others, clearly illustrated the extent of Defendant's involvement in the kidnapping and assaults, and his attitude and demeanor throughout. While Defendant testified that he effectively was forced to participate in the kidnappings and assaults, his active and independent involvement in the charged conduct was bolstered not only by the video and the testimony of the victims, but by testimony of prior "missions" where Defendant led his associates on at least four violent drug raids on occasions where Khamnivong was not present or involved.[31] These previous "missions," or drug raids, involved gruesome violence similar in nature to that displayed in the video. The combination of all this gave the jury ample evidence to assess Defendant's credibility and to consider who, among the parties, was controlling the situation at the time of the kidnapping and torture, and to whom the participants looked for leadership. While Attorney Leen attempted to keep the video out of evidence and to impeach the victims and other Government witnesses, there is little more he could have done to lessen its impact. And there was no evidence, other than Defendant's testimony, that Khamnivong threatened Defendant or that Defendant was ever in fear of or in imminent danger of injury at the time

---

[29] *Id.* at 163 (Testimony of Timothy Miller).
[30] *See also id.* at 168–70 (transcript of the audio portion of the assault).
[31] *Id.* at 53–55 (Testimony of Timothy Miller).

*United States v. Seugasala*                                                                 Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing          Page 12
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 12 of 15

in question.  Nor is there any evidence that Defendant was unable to extract himself from the situation.  In fact, as previously mentioned, the evidence established that it was Defendant who initially met the victims privately and brought them to the scene of the assault, and there was convincing evidence that it was Defendant who planned, orchestrated, and led the assault.  There was little more Attorney Leen could have done to negate the video and the extensive testimony of witnesses establishing Defendant's independent and voluntary involvement in the kidnappings and related criminal activity.

## IX.   CONCLUSION

The Court concludes that throughout the time frame covered by the Indictment, the overwhelming evidence presented at trial established that Defendant was not acting as a government agent when committing the crimes charged, and did not reasonably believe that he was.  Furthermore, at the time of the kidnapping and torture, Defendant was not acting out of fear of Khamnivong or anyone else.  Defendant fully understood that his criminal conduct, which he attempted throughout to conceal from authorities, was not authorized by any government official.  While Attorney Leen made great effort to defend Defendant, the overwhelming evidence was more than he, or anyone else, likely could have overcome.

Defendant has failed to overcome the strong presumption of competency required by *Strickland*, and has failed to establish that the defense provided by Attorney Leen was deficient or that his representation of Defendant fell below an objective standard of reasonableness as to all counts.  Attorney Leen raised the only two plausible defenses to the crimes charged and argued them vigorously to the jury.  He obviously was prepared to

*United States v. Seugasala*                                                      Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                Page 13
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 13 of 15

proceed to trial at the time it took place. To establish ineffective assistance of counsel, a party must show that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[32] Here, even if all the evidence Defendant now claims should have been admitted into evidence was admitted, there is no reasonable probability that the verdicts would have been different. Overall, there is no reasonable basis to challenge the fairness of the outcome.

Therefore, for the reasons set forth above, as well as for those reasons argued by the Government, **Defendant's § 2255 Petition, as Amended, is DENIED, with respect to Claims 5, 6 and 13. Defendant's first Claim for relief relating to Count 5 of the Amended First Superseding Indictment is GRANTED, and Count 5 shall be dismissed.**

## X. CERTIFICATE OF APPEALABILITY

For the reasons set forth above, the Court concludes that reasonable jurists could not disagree with the Court's findings herein, or find that Defendant has made a substantial showing of the denial of a Constitutional right. Therefore, **a Certificate of Appealability shall not issue pursuant to 28 U.S.C. § 2253(c).**

## XI. SENTENCING

Given the dismissal of one of the counts of Conviction, re-sentencing is required by Ninth Circuit law.[33] Defendant may attend the re-sentencing in person or virtually, as he chooses. An up-dated Presentence Report shall be prepared by Probation

---

[32] *Babbitt v. Calderon,* 151 F.3d 1170, 1173 (9th Cir. 1998) (quoting *Strickland,* 466 U.S. at 694).
[33] *United States v. Ruiz-Alvarez,* 211 F.3d 1181, 1185 (9th Cir. 2000).

*United States v. Seugasala*                                      Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing          Page 14

Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 14 of 15

and filed on or before **June 15, 2022.**  Sentencing memoranda are due on or before **July 22, 2022.**  Sentencing shall take place in Anchorage, Alaska, at 9:30 a.m. on **September 14, 2022**, in Anchorage Courtroom 4.  Defendant shall notify the Court as to whether he wants to attend sentencing in person or virtually within thirty days of this Order.

IT IS SO ORDERED this 12th day of April, 2021, at Anchorage, Alaska.


*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*United States v. Seugasala*                                                                    Case No. 3:13-cr-00092 RRB
Order Granting, in Part, and Denying, in Part, Motion to Vacate and Scheduling Sentencing                      Page 15
Case 3:13-cr-00092-RRB   Document 1074   Filed 04/12/22   Page 15 of 15